IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| RUSSELL PFEFFER, DAVID DESSNER, ADAM SHERMAN, FRANK CRONIN, ROGER ROJAS, JASON AUERBACH, and ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA CORPORATION and BANK OF AMERICA N.A., <br><br> Defendants. | CIVIL ACTION COMPLAINT <br><br> Civ No. 3:23-cv-813 <br><br><br> (JURY TRIAL DEMANDED) |

## INDIVIDUAL, COLLECTIVE AND CLASS ACTION COMPLAINT

Russell Pfeffer ("Pfeffer") of Connecticut, David Dessner ("Dessner") of South Carolina, Jason Auerbach ("Auerbach") of Florida, and Adam Sherman ("Sherman"), Frank Cronin ("Cronin"), and Rojer Rojas ("Rojas") of New York (collectively "Named Plaintiffs"), on behalf of themselves and all similarly situated employees pursuant to 29 U.S.C. § 216(b) and Rule 23 of the Federal Rules of Civil Procedure, bring this Action against Defendants Bank of America Corporation and Bank of America, N.A. ("Defendants" or "Bank of America").

## NATURE OF THE CASE

1.      Named Plaintiffs were Mortgage Loan Officers ("MLOs") employed by Bank of America in New York, Connecticut, South Carolina and Florida.  Like all MLOs, Named Plaintiffs sold Bank of America's mortgage and other loan products on commission.  They received no

1

salary, routinely worked nights, weekends and in excess of 60 hour weeks, and, with their follow MLOs, generated billions of dollars for Bank of America.  They bring this Action now, on behalf of themselves and thousands of similarly situated employees, to recover the overtime and minimum wage Bank of America willfully failed to pay them while they were doing it.

2.      From at least 2016, Bank of America systematically misclassified Named Plaintiffs and thousands of loan officers across the country as exempt employees under the FLSA and state labor laws.   It then, apparently on the basis of this misclassification, simply did not track or pay overtime to Named Plaintiffs and thousands of other loan officers across the country for at least seven years.

3.      Bank of America could not possibly have been unaware in 2016, and cannot possibly be unaware as it continues this policy today, that MLOs paid on a commission basis are entitled to overtime.  The same misclassification of the same category of employees has been uniformly rejected by the courts and specifically (and famously) ruled out by the Department of Labor in a 2010 Interpretation unanimously upheld by the Supreme Court in 2015.  It has also cost Bank of America's peers hundreds of millions of dollars.

4.      There is no colorable exemption in the statute or regulations.  Notwithstanding that it knew, or should have known, that Named Plaintiffs and similarly situated loan officers were non-exempt, Bank of America created the fiction of an exemption by failing to comply with every requirement of the FLSA.  Bank of America did not keep time records.  Bank of America did not give notice of, and affirmatively misrepresented and obstructed, the right to overtime.  Bank of America did not set and enforce maximum workhours.  Bank of America did not track workhours. Bank of America did not attribute commissions to workweeks, calculate a regular or overtime rate

2

of pay, or determine, in any workweek, how many hours its loan officers had worked and what it owed them for the hours they worked overtime.

5. Bank of America did, however, knowingly accept and effectively require tens of hours of overtime work from each of the Named Plaintiffs and their thousands of colleagues every regular workweek they were employed by Bank of America. It has systematically and willfully violated the FLSA and the labor laws of dozens of states for at least seven years, likely much longer and through today.

6. Named Plaintiffs, on behalf of themselves and similarly situated MLOs, or, irrespective of title, employees performing substantially the same function on a commission basis (with Named Plaintiffs and MLOs "Loan Officers"), who were employed by Bank of America between three years prior to the filing of this Action and final judgment ("FLSA Collective") bring claims for violation of the FLSA, 29 U.S.C. § 201, *et seq.*, to recover unpaid overtime compensation, unpaid minimum wage, liquidated damages in an amount equal to unpaid overtime compensation and minimum wage, prejudgment interest, and attorneys' fees and costs pursuant to 29 U.S.C. § 216(b) and respectfully request notice and certification of an FLSA collective pursuant to 29 U.S.C. § 216(B).

7. Plaintiffs Sherman, Cronin and Rojas ("New York Named Plaintiffs"), on behalf of themselves and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, all similarly situated Loan Officers who were employed by Bank of America between six years prior to the filing of this Action and final judgment ("New York Class"), bring claims under the New York Minimum Wage Act, N.Y. Lab. Law §§ 650 *et. seq.*, N.Y. Lab. Law § §190 *et. seq.*, and 12 N.Y.C.C.R. § 142 (collectively "New York Labor Law" or "NYLL" Claims).

3

8.     Plaintiff Pfeffer ("Connecticut Named Plaintiff"), on behalf of himself and, pursuant to Rule 23 of the Federal Rules of Civil Procedure,  all similarly situated Loan Officers who were employed by Bank of America in Connecticut between three years prior to the filing of this Action and final judgment ("Connecticut Class"), brings claims under the Connecticut Wage Payment Law, Conn. Gen. Stat. Ann. §§ 31-58 to 31-76 ("CWPL" Claims).

9.     Dessner ("South Carolina Named Plaintiff"), on behalf of himself and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, all similarly situated Loan Officers who were employed by Bank of America in South Carolina between two years prior to the filing of this Action and final judgment ("South Carolina Class") brings claims under the Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 to 41-10-110 (collectively "SCPWA" Claims).

10.     Auerbach ("Florida Named Plaintiff"), on behalf of himself and all similarly situated Loan Officers who were employed by Bank of America in Florida between four years prior to the filing of this Action and final judgment ("Florida Class") brings claims under the Florida Minimum Wage Act, § 448.110, Fla. Stat., F.S.A. Const. Art. 10 § 24(c), and all related regulations (collectively "FMWA" Claims).

## PARTIES

11.     Plaintiff Pfeffer is a resident of the State of Connecticut.  From April 2016 through February 2023, he was employed by Bank of America as a Mortgage Loan Officer at Bank of America's offices in Connecticut.

12.     Plaintiff Sherman is a resident of the State of New York.   From April 2016 through February 2023, he was employed by Bank of America as a Mortgage Loan Officer at Bank of America's offices in New York.

4

13. Plaintiff Cronin is a resident of the State of New York. From January 2018 through August 2022, he was employed by Bank of America as a Mortgage Loan Officer at Bank of America's offices in New York.

14. Plaintiff Rojas is a resident of the State of New York. Rojas was employed by Bank of America as a Mortgage Loan Officer at Bank of America's offices in New York.

15. Plaintiff Dessner is a resident of the State of South Carolina. From January 2019 through October 2022, he was employed by Bank of America as a Mortgage Loan Officer at Bank of America's offices in South Carolina.

16. Plaintiff Auerbach is a resident of the State of Florida. From April 2016 through April 2022, he was employed by Bank of America as a Mortgage Loan Officer at Bank of America's offices in Florida.

17. Named Plaintiffs, the FLSA Collective and Class Members were "employees" of Bank of America as defined by 29 U.S.C. §203(e) and applicable State Labor Laws.

18. Defendant Bank of America Corp is a bank holding company incorporated in the State of Delaware with its principal place of business located at Bank of America Corporate Center, 100 North Tryon Street, Charlotte, NC 28255.

19. Defendant Bank of America N.A., a subsidiary of Bank of America Corp., is a federally chartered bank organized in North Carolina and headquartered at Bank of America Corporate Center, 100 North Tryon Street, Charlotte, NC 28255.

20. Bank of America operates offices and conducts significant business across the United States, including in the States of New York, Connecticut, South Carolina and Florida.

21. Bank of America is and at all relevant times has been an enterprise within the

5

meaning of 29 U.S.C §203(r) and engaged in interstate commerce within the meaning of 29 U.S.C §203(s)(1) with annual gross sales volume in excess of $500,000.

22.     Bank of America is and at all relevant times has been an "Employer" as defined by 29 U.S.C §203(d) and State Labor Laws.

## JURISDICTION AND VENUE

23.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  The Collective Action Plaintiffs bring claims under the laws of the United States, 29 U.S.C. § 201 *et seq.*

24.     The Court has supplemental jurisdiction over the Class Claims pursuant to 28 U.S.C. § 1367.  The FLSA Claims and Class Claims arise out of a common nucleus of operative fact.

25.     Separately, the Court has subject matter jurisdiction over the Class Claims pursuant to 8 U.S.C. § 1332(d).  Each of Plaintiffs' proposed classes meets or exceeds 100 members, the citizenship of at least some members of each proposed class differs from the citizenship of Bank of America and the Class Claims, upon information and belief, exceed $5,000,000.

26.     The Court has personal jurisdiction over Defendants.  Defendant Bank of America, N.A. is a national association bank with its designated main office in this District.  Defendant Bank of America Corp is incorporated in the State of Delaware with its principal place of business in this District.  Defendants are citizens of North Carolina.

27.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2).  Defendants are citizens of the State of North Carolina with their principal place of business in this judicial district.

6

28.     A substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district and no other venue has a closer nexus to the operative facts or greater interest in this Action.

## SUBSTANTIVE ALLEGATIONS[1]

**Employment and Compensation**

29.     Bank of America employed or employs[2] Loan Officers as MLOs or, irrespective of title, to perform the function of selling, processing or otherwise facilitating the sale of Bank of America's mortgage and other loan products to consumers on a commission basis.

30.     Bank of America paid Loan Officers on commission as a percentage of mortgage and other loan products sold to customers.  Commissions were paid monthly, i.e., twelve (12) times per year.

31.     Loan Officers did not receive a guaranteed salary or other regular compensation.

32.     Bank of America advanced a fixed "draw" against commissions to Loan Officers in two pay periods each month, i.e., twenty-four (24) times per year.

33.     Pursuant to Bank of America's written policies from at least 2016 onward, Bank of America recovers "draws" against commissions each month and pays monthly commissions net of (i) the draw for the pay period; (ii) the draw for the immediately preceding pay period, for which no commissions are paid; and (iii) a "deficit" balance of any prior draw(s) that exceeded prior monthly commissions.

---

[1] All allegations of this Complaint are stated together.  Sections and headers are solely for readability and each section incorporates all allegations of this Complaint.

[2] The FLSA Collective and each Class includes current and former employees of Bank of America and Bank of America's violations of the FLSA and State Labor Laws are ongoing as of the date of this Complaint.  Solely for readability, allegations will generally be stated in the past tense.

34.     Pursuant to Bank of America's written policies from at least 2016 onward, in months in which commissions are less than the balance of draws, Bank of America rolls over a "draw" deficit recoverable against future commissions.

**FLSA and State Statutory Classification**

35.     Bank of America classified Loan Officers as exempt employees under the FLSA and State Labor Laws.

36.     Bank of America generally communicated to Loan Officers that it had classified them as exempt employees under the FLSA and the applicable State Labor Law.

37.     Bank of America did not provide Loan Officers notice of Loan Officers' wage and hour rights under the FLSA or State Labor Laws.

38.     Bank of America did not set work schedules, including regular daily start and end times for each working day, overtime requirements or a process for overtime requests or approvals for Loan Officers.

39.     Bank of America did not keep time records for Loan Officers and did not require Loan Officers to clock in or otherwise provide or keep detailed time records, request approval of overtime or submit overtime records.

40.     The FLSA's overtime requirements cover "employees…engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 207.  Loan Officers, employed by a national bank in the sale of mortgage and other loan products to customers across the country, were covered employees.

41.     No exemption to the FLSA's overtime requirements or the overtime requirements

8

of State Labor Laws applied to Loan Officers.

42.     Bank of America did not employ Loan Officers in a retail or service establishment as defined by Section 7(i) of the FLSA and 29 CFR § 779.24.

43.     Bank of America's sales of goods and services, including residential mortgages, are not generally recognized as retail sales, as that term is defined by Section 7(i) of the FLSA and 29 CFR § 779.24.

44.     Even if the sale of residential mortgage products or consumer loans were characterized as "retail sales" as that term is defined by Section 7(i) of the FLSA and 29 CFR § 779.24, according to Bank of America's public financial statements residential mortgages and consumer loans total less than 75% of Bank of America's sales of goods and services and significantly less than commercial loans.

45.     Loan Officers were non-salaried employees and did not perform executive, administrative or professional functions as defined by Section 13(a)(1) of the FLSA, 29 CFR 541.100-300 and Administrative Interpretation No. 2010-1.

46.     Loan Officers' primary job function was the sale of Bank of America's mortgage and other loan products to customers. Loan Officers' duties consisted of prospecting, soliciting, or responding to interest or referrals of potential customers of mortgage and other loan products, assisting customers in submitting loan applications and other paperwork, assisting in the approval and origination process, and providing customer service.

47.     Loan Officers were not customarily and regularly engaged away from Bank of America's place or places of business as that term is defined by 29 CFR 541.502.

48.     Loan Officers were employed, managed and supervised in Bank of America's

9

offices and performed their duties from Bank of America's offices, Loan Officers' home offices and other fixed locations by telephone and internet.

49.    From at least 2016 onward, Loan Officers were non-exempt employees. Bank of America's systematic misclassification of Loan Officers as exempt employees was willful and not based upon any reasonable interpretation of the law.

**Bank of America's Systematic Violation of Wage and Hour Laws**

50.    As a policy applied to Loan Officers as a class and reflected in Bank of America's compensation plans and other written compensation documents, Bank of America misclassified Loan Officers as exempt employees, communicated to Loan Officers that they were exempt employees, and failed to keep time records or set regular working hours, total hours worked each workweek including hours in excess of FLSA and State Labor Law maximum hours, or otherwise comply with the record-keeping requirements of Sections 6 and 7(a) of the FLSA and 29 CFR 516. Consequently, exact time records do not exist.

51.    Loan Officers worked in excess of 40 hours per week in the regular course of their duties and routinely worked in excess of 10 hours per day.

52.    Named Plaintiffs generally worked in excess of 60 hours per week and these hours were typical of Loan Officers.

53.    As a policy applied to Loan Officers as a class and reflected in Bank of America's compensation plans and other written compensation documents, Bank of America did not pay Loan Officers an overtime premium in any amount for hours in excess of 40 hours per week in any workweek.

54.    As a policy applied to Loan Officers as a class and reflected in Bank of America's

10

compensation plans and other written compensation documents, Bank of America did not compute overtime under any method permitted by the FLSA, otherwise attempt to compute overtime or keep the weekly time records necessary to compute overtime.

***Standard Method***

55.     Loan Officers were non-salaried employees paid on a commission basis.  Loan Officers' commissions were not excludable from their rate of pay as that term is defined by 29 U.S.C. § 207(e) and 29 CFR 778.

56.     As a policy applied to Loan Officers as a class and reflected in Bank of America's compensation plans and other written compensation documents, Bank of America did not, at the time commissions were paid each month or at any other time, (a) attribute that month's commissions to each workweek; (b) calculate the rate of pay for each workweek consisting of commissions and all other non-excludable pay divided by hours worked; or (c) pay to each Loan Officer one and a half times the rate of pay for each hour worked in excess of forty hours.

57.     As a policy applied to Loan Officers as a class and reflected in Bank of America's compensation plans and other written compensation documents, Bank of America did not, at the time the recoverable semi-monthly "draw" against Loan Officers' commissions was advanced, (a) attribute the semi-monthly "draw" to the workweeks within the pay period as fixed salary or other non-excludable pay; (b) calculate the rate of pay for each workweek by dividing the portion of the semi-monthly "draw" attributable to each workweek by hours worked; or (c) pay to each Loan Officer one and a half times the rate of pay for each hour worked in excess of forty hours.

58.     As a policy applied to Loan Officers as a class and reflected in Bank of America's compensation plans and other written compensation documents, Bank of America did not calculate

11

a rate of pay for any workweek on the basis of any other non-excludable pay and pay to each Loan Officer one and a half times the rate of pay for work hours in excess of 40 hours per week.

***Fluctuating Workweek Method***

59.     Bank of America did not compute Loan Officers' overtime using the fluctuating workweek method, as defined by 29 CFR 778.114.

60.     Loan Officers did not receive a fixed salary of any kind, including a fixed salary as defined by 29 CFR 778.114.

61.     Bank of America's compensation policies, applied to Loan Officers as a class and reflected in Bank of America's compensation plans and other written compensation documents, do not define, characterize or treat the recoverable semi-monthly "draw" against Loan Officers' commissions as a "fixed salary," as defined by 29 CFR 778.114,

62.     Bank of America did not maintain time records of the hours worked in any workweek to ensure, or even ascertain whether, the "draw" against Loan Officers' commissions was sufficient to provide compensation to each Loan Officer at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours worked was greatest.

63.     Bank of America's compensation policies, applied to Loan Officers as a class and reflected in Bank of America's compensation plans and other written compensation documents, do not define, characterize or treat the recoverable semi-monthly "draw" as a "fixed salary" that was "compensation (apart from overtime premiums and any bonuses, premium payments, commissions, hazard pay, or other additional pay of any kind not excludable from the regular rate under section 7(e)(l) through (8) of the Act)," i.e., straight time, "for the total hours worked each

Case 3:23-cv-00813-KDB-DCK   Document 1   Filed 11/30/23   Page 12 of 39

workweek regardless of the number of hours" as defined by 29 CFR 778.114(a)(4).

64.     Bank of America and Loan Officers did not have a clear and mutual understanding that the recoverable semi-monthly "draw" against Loan Officers' commissions was a "fixed salary" that was straight time compensation, as defined by 29 CFR 778.114(a)(4), for all hours worked, including the straight time rate component of each hour worked in excess of 40 hours.

65.     Bank of America did not determine Loan Officers' regular rate of pay, as defined by 29 CFR 778.114(a)(5), for any workweek since at least 2016.

66.     Bank of America did not keep records of Loan Officers' hours worked for any workweek since at least 2016.

67.     Bank of America did not pay Loan Officers a "fixed salary" as straight time compensation for all hours worked in any workweek since at least 2016.

68.     Bank of America did not attribute Loan Officers monthly commissions any workweek since at least 2016.

69.     Bank of America did not calculate Loan Officers' regular rate of pay for each workweek by dividing the amount of a "fixed salary" and commissions attributed to the workweek by the number of hours worked in the workweek.

70.     Bank of America did not compute Loan Officers' overtime compensation, as defined by 29 CFR 778.114(a)(5), for any workweek since at least 2016.

71.     Bank of America did not determine Loan Officers' overtime rate for each workweek by calculating the Loan Officers' regular rate of pay for the workweek and applying at least one half of the regular rate of pay as the overtime rate for the workweek.

72.     Bank of America did not keep records of Loan Officers' hours worked in excess of

forty hours in any workweek since at least 2016.

73. Bank of America did not calculate Loan Officers' overtime for each workweek by multiplying the overtime rate for the week by the hours worked in excess of forty hours.

74. Bank of America did not pay Loan Officers' overtime compensation, as defined by 29 CFR 778.114(a)(5), for any workweek since at least 2016.

**Minimum Wage**

75. As a policy applied to Loan Officers as a class and reflected in Bank of America's compensation plans and other written compensation documents, from at least 2016 onward Bank of America did not pay Loan Officers minimum wage for hours worked during the first pay period of every month.

76. As a policy applied to Loan Officers as a class and reflected in Bank of America's compensation plans and other written compensation documents, from at least 2016 onward Bank of America did not pay Loan Officers minimum wage for hours worked during the second pay period of every month in which the total of the "draw" "deficit" and the difference between the "draw" "deficit" and the minimum wage exceeded commissions paid.

**Bank of America's Willful Violation of the FLSA and State Labor Laws**

77. From at least 2016 onward, Bank of America systematically violated Section 7 of the FLSA and State Labor Laws by failing to compensate Loan Officers for hours in excess of 40 hours per week at a rate at least one and one-half times their regular rate of pay.

78. Bank of America systematically misclassified Loan Officers as exempt employees with no basis in law and in willful disregard of clear statutory, regulatory and judicial authority barring the same exemption of the same category of mortgage loan officers under the same facts

14

and circumstances, with the clear effect and purpose of unlawfully depriving Loan Officers of overtime compensation.

79. Bank of America willfully represented to Loan Officers that they were exempt employees, with the clear effect and purpose of concealing and obstructing their rights under the FLSA and State Labor Laws.

80. Bank of America willfully and comprehensively disregarded the record-keeping requirements of the FLSA and State Labor Laws, with the clear effect and purpose of unlawfully depriving Loan Officers of overtime compensation and preventing the creation of a written record of overtime.

81. Bank of America willfully and comprehensively disregarded FLSA and State Labor Law requirements for the computation of overtime, including calculating and keeping a record of regular and overtime rates of pay, attributing commissions to workweeks, recording hours worked in each workweek, and calculating overtime owed on work hours in excess of forty hours per week, with the clear effect and purpose of unlawfully depriving Loan Officers of overtime compensation.

82. Bank of America implemented and maintained its recoverable semi-monthly "draw" against commissions structure in willful disregard of statutory, regulatory and judicial authority that the recoverable "draw" structure does not meet FLSA and State Labor Law minimum wage requirements.

83. Bank of America's years-long, class-wide failure to pay overtime and partial failure to pay minimum wage willfully violated Sections 6 and 7 of the FLSA. Named Plaintiffs and the FLSA Collective are entitled to recover all unpaid overtime compensation, unpaid minimum wages, and liquidated damages in an amount equal to all unpaid overtime compensation and

minimum wages for the three years preceding the date of this Complaint, as well as attorneys' fees and costs, prejudgment interest and such other relief as provided by law or as would be just and equitable.

84.     Named Plaintiffs and Putative Class Members are further entitled to recover unpaid overtime compensation, unpaid minimum wages, and statutory penalties, with attorneys' fees and costs, prejudgment interest and such other relief provided by law or as would be just and equitable, under State Labor Laws, as set forth specifically below.

## COLLECTIVE ACTION ALLEGATIONS

85.     Pursuant to 29 U.S.C. §216(b), Named Plaintiffs, on behalf of themselves and the FLSA Collective, bring this Collective Action against Bank of America for violations of 29 U.S.C. § 206 and 207.

86.     Named Plaintiffs and the FLSA Collective are similarly situated, *inter alia*:

(i)     Named Plaintiffs and the FLSA Collective were employed by Bank of America in the sale of residential mortgage and other loan products;

(ii)    Named Plaintiffs and the FLSA Collective were paid on a commission basis with recoverable semi-monthly "draw" against commissions pursuant to compensation policies applied to the FLSA Collective as a class;

(iii)   Named Plaintiffs and the FLSA Collective worked far in excess of forty hours per week throughout their employment;

(iv)    Bank of America violated the FLSA by systematically misclassifying Named Plaintiffs and the FLSA Collective as exempt employees, failing to keep records of their time, and failing to track, compute and pay overtime for every workweek in

16

every pay period of their employment; and

(v)     Bank of America violated the FLSA by systematically failing to pay Named Plaintiffs and the FLSA Collective minimum wage.

87.     Bank of America classified Named Plaintiffs as exempt employees throughout their employment and represented to Named Plaintiffs that they were exempt employees through, *inter alia*, written compensation plans and other compensation documents, commission and pay statements, and written notices common to the FLSA Collective.

88.     Bank of America did not maintain daily time records or instruct Named Plaintiffs to submit or record hours worked, including overtime hours, and instructed Named Plaintiffs that they were exempt employees for whom time records were unnecessary.  These policies and communications were common to the FLSA Collective.

89.      Named Plaintiffs consequently lack access to detailed time records that would permit an exact, mathematical accounting of overtime hours worked each week of their employment.  On information and belief, the FLSA Collective similarly lack access to detailed time records.

90.     Bank of America did not establish and enforce a regular workday or workweek schedule for Named Plaintiffs or enforce or effectively permit maximum hours consistent with the FLSA and State Labor Laws.   These were policies and practices applied to the FLSA Collective as a class.

91.     Throughout Pfeffer's employment, Pfeffer's standard workweek included nights and weekends and was in excess of 60 hours, overwhelmingly in Bank of America's offices and his home office.  Bank of America, including through Pfeffer's manager and numerous employees,

17

was at all times aware of, permitted and effectively required overtime hours as part of Pfeffer's job function. Pfeffer was not paid overtime wages in any amount for work hours in excess of 40 hours in any workweek during the three years preceding the filing of this action.

92. Throughout Dessner's employment, Dessner's standard workweek included nights and weekends and was in excess of 60 hours, overwhelmingly in Bank of America's offices and Dessner's home office. Bank of America, including through Dessner's manager and numerous employees, was at all times aware of, permitted and effectively required overtime hours as part of Dessner's job function. Dessner was not paid overtime wages in any amount for work hours in excess of 40 hours in any workweek during the three years preceding the filing of this action.

93. Throughout Sherman's employment, Sherman's standard workweek included nights and weekends and was in excess of 60 hours, overwhelmingly in Bank of America's offices and Sherman's home office. Bank of America, including through Sherman's manager and numerous employees, was at all times aware of, permitted and effectively required overtime hours as part of Sherman's job function. Sherman was not paid overtime wages in any amount for work hours in excess of 40 hours in any workweek during the three years preceding the filing of this action.

94. Throughout Cronin's employment, Cronin's standard workweek included nights and weekends and was in excess of 60 hours, overwhelmingly in Bank of America's offices and Cronin's home office. Bank of America, including through Cronin's manager and numerous employees, was at all times aware of, permitted and effectively required overtime hours as part of Cronin's job function. Cronin was not paid overtime wages in any amount for work hours in excess of 40 hours in any workweek during the three years preceding the filing of this action.

95.     Throughout Rojas' employment, Rojas' standard workweek included nights and weekends and was in excess of 60 hours, overwhelmingly in Bank of America's offices and Rojas' home office.  Bank of America, including through Rojas' manager and numerous employees, was at all times aware of, permitted and effectively required overtime hours as part of Rojas' job function.  Rojas was not paid overtime wages in any amount for work hours in excess of 40 hours in any workweek during the three years preceding the filing of this action.

96.     Throughout Auerbach's employment, Auerbach's standard workweek included nights and weekends and was in excess of 60 hours, overwhelmingly in Bank of America's offices and Auerbach's home office.  Bank of America, including through Auerbach's manager and numerous employees, was at all times aware of, permitted and effectively required overtime hours as part of Auerbach's job function.  Auerbach was not paid overtime wages in any amount for work hours in excess of 40 hours in any workweek during the three years preceding the filing of this action.

97.     By occupation, loan officers routinely work and are required to work workdays in in excess of 8 hours, workweeks drastically in excess of 40 hours and weekends.  Named Plaintiffs routinely worked at least 60 hours per week, with the knowledge and approval of Bank of America. Named Plaintiffs were aware that similarly situated Loan Officers worked similar hours and, on information and belief, the FLSA Collective routinely worked at least 60 hours per week.

98.     As a policy applied to the FLSA Collective as a class and reflected in Bank of America's compensation plans and other compensation documents, Bank of America did not pay the FLSA Collective overtime wages in any amount for work hours in excess of 40 hours in any workweek during the three years preceding the filing of this action.

19

99.     The FLSA Collective is in the several thousands and would benefit from certification and the issuance of a court-supervised notice of this Action.  Loan Officers employed by Bank of America at any time during the three years preceding the filing of this Action are known to Bank of America, readily identify and easily locatable through Bank of America's records.  Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

### <u>New York Class</u>

100.    Plaintiffs Sherman, Cronin, and Rojas bring Count II under Federal Rule of Civil Procedure 23 on behalf of themselves and a class consisting of persons who at any time between six years preceding the filing of this Action and final judgment were:

(i)     employed by Bank of America in the State of New York as MLOs or, irrespective of title, performed MLO functions;

(ii)    paid on a commission basis with a recoverable semi-monthly "draw" against commissions;

(iii)   classified as exempt from maximum time requirements under the FLSA and/or the New York Labor Law; and

(iv)    were not paid overtime compensation pursuant to FLSA and/or New York Labor Law requirements.

101.    On information and belief, Bank of America has employed at least several hundred New York Class members over the six years preceding the filing of this Action.  The New York Class is so numerous that the joinder of all class members is impracticable.

102.    New York Named Plaintiffs' claims are typical of the claims of the New York

20

Class:

    (i)     New York Named Plaintiffs and the New York Class were employed by Bank of America in the sale of residential mortgage and other loan products;

    (ii)    New York Named Plaintiffs and the New York Class were paid on a commission basis with recoverable semi-monthly "draw" against commissions pursuant to compensation policies applied to the New York Class as a class;

    (iii)   New York Named Plaintiffs and the New York Class worked far in excess of forty hours per week and throughout their employment;

    (iv)   Bank of America violated the FLSA and New York Labor Law by systematically misclassifying New York Named Plaintiffs and the New York Class as exempt employees, failing to keep records of their time, and failing to track, compute and pay overtime for every workweek in every pay period of their employment; and

    (v)    Bank of America violated the FLSA and New York Labor Law by systematically failing to pay New York Named Plaintiffs and the New York Class minimum wage.

103.    Common questions of law and fact predominate over questions that affect only individual members of the New York Class.

104.    Under the facts and circumstances applicable to all New York Class members, Bank of America's classification of New York Class members as exempt employees under the FLSA and New York Labor Law will be a common question of law that, given Bank of America's class-wide failure to keep time records, compute regular rate of pay, overtime rate and overtime under any statutorily authorized methodology, or at all, and pay overtime, is dispositive of liability. The theory and calculation of damages are prescribed by statute and present questions of law common

to the class. The calculation and apportionment of damage claims is arithmetical and easily ascertainable from Bank of America's records of employee tenure.

105. New York Named Plaintiffs will fairly and adequately protect the interests of the New York Class. New York Named Plaintiffs' individual interests are significant and coincident with and not antagonistic to the interests of the New York Class and the claims of the New York Named Plaintiffs and New York Class are substantively identical. New York Named Plaintiffs have retained counsel with extensive experience successfully litigating labor, employment and compensation claims in the financial services industry, extensive experience successfully trying substantial cases against major financial services firms, and significant resources.

106. Management of the New York Class Action presents no significant or special difficulties that would preclude its maintenance as a class action, either internally or as part of the wider FLSA Collective and Class Actions. The New York Class is known to Bank of America and readily identifiable from its records, liability turns on uniform issues of law governed by the New York Labor Law and FLSA, and the theory and calculation of damages are straightforward and uniform across the New York Class.

107. A class action is superior to other available methods for the fair and efficient adjudication of the claims of New York Class Members. A class action will allow all similarly situated individuals to prosecute their common statutory claims in a single forum simultaneously. Prosecution of hundreds or thousands of separate actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Bank of America. Most seriously, the amount at stake on each individual claim for unpaid overtime and minimum wage makes individual actions economically prohibitive.

22

## Connecticut Class

108.     Plaintiff Pfeffer brings Count III under Federal Rule of Civil Procedure 23 on behalf of himself and a class consisting of persons who at any time between three years preceding the filing of this Action and final judgment were:

   (i)     employed by Bank of America in the State of Connecticut as MLOs or, irrespective of title, performed MLO functions;

   (ii)    paid on a commission basis with a recoverable semi-monthly "draw" against commissions;

   (iii)   classified as exempt from maximum time requirements under the FLSA and/or the Connecticut Wage Payment Law; and

   (iv)    were not paid overtime compensation pursuant to FLSA and/or Connecticut Wage Payment Law requirements.

109.     On information and belief, Bank of America has employed at least several hundred Connecticut Class members over the three years preceding the filing of this Action.  The Connecticut Class is so numerous that the joinder of all class members is impracticable.

110.     Connecticut Named Plaintiff's claims are typical of the claims of the Connecticut Class:

   (i)     Connecticut Named Plaintiff and the Connecticut Class were employed by Bank of America in the sale of residential mortgage and other loan products;

   (ii)    Connecticut Named Plaintiff and the Connecticut Class were paid on a commission basis with recoverable semi-monthly "draw" against commissions pursuant to compensation policies applied to the Connecticut Class as a class;

23

(iii)  Connecticut Named Plaintiff and the Connecticut Class worked far in excess of forty hours per week and throughout their employment;

(iv)  Bank of America violated the FLSA and Connecticut Wage Payment Law by systematically misclassifying Connecticut Named Plaintiff and the Connecticut Class as exempt employees, failing to keep records of their time, and failing to track, compute and pay overtime for every workweek in every pay period of their employment; and

(v)  Bank of America violated the FLSA and Connecticut Wage Payment Law by systematically failing to pay Connecticut Named Plaintiff and the Connecticut Class minimum wage.

111.  Common questions of law and fact predominate over questions that affect only individual members of the Connecticut Class.

112.  Under the facts and circumstances applicable to all Connecticut Class members, Bank of America's classification of Connecticut Class members as exempt employees under the FLSA and Connecticut Wage Payment Law will be a common question of law that, given Bank of America's class-wide failure to keep time records, compute regular rate of pay, overtime rate and overtime under any statutorily authorized methodology, or at all, and pay overtime, is dispositive of liability.  The theory and calculation of damages are prescribed by statute and present questions of law common to the class.  The calculation and apportionment of damage claims is arithmetical and easily ascertainable from Bank of America's records of employee tenure.

113.  Connecticut Named Plaintiff will fairly and adequately protect the interests of the Connecticut Class.  Connecticut Named Plaintiff's individual interests are significant and

24

coincident with and not antagonistic to the interests of the Connecticut Class and the claims of the Connecticut Named Plaintiff and Connecticut Class are substantively identical. Connecticut Named Plaintiff has retained counsel with extensive experience successfully litigating labor, employment and compensation claims in the financial services industry, extensive experience successfully trying substantial cases against major financial services firms, and significant resources.

114. Management of the Connecticut Class Action presents no significant or special difficulties that would preclude its maintenance as a class action, either internally or as part of the wider FLSA Collective and Class Actions. The Connecticut Class is known to Bank of America and readily identifiable from its records, liability turns on uniform issues of law governed by the Connecticut Wage Payment Law and FLSA, and the theory and calculation of damages are straightforward and uniform across the Connecticut Class.

115. A class action is superior to other available methods for the fair and efficient adjudication of the claims of Connecticut Class Members. A class action will allow all similarly situated individuals to prosecute their common statutory claims in a single forum simultaneously. Prosecution of hundreds or thousands of separate actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Bank of America. Most seriously, the amount at stake on each individual claim for unpaid overtime and minimum wage makes individual actions economically prohibitive.

**South Carolina Class**

116. Plaintiff Dressner brings Count IV under Federal Rule of Civil Procedure 23 on behalf of himself and a class consisting of persons who at any time between two years preceding

the filing of this Action and final judgment were:

    (i)      employed by Bank of America in the State of South Carolina as MLOs or, irrespective of title, performed MLO functions;

    (ii)     paid on a commission basis with a recoverable semi-monthly "draw" against commissions;

    (iii)    classified as exempt from maximum time requirements under the FLSA and/or the South Carolina Payment of Wages Act; and

    (iv)    were not paid overtime compensation pursuant to FLSA and/or South Carolina Payment of Wages Act requirements.

117.    On information and belief, Bank of America has employed at least several hundred South Carolina Class members over the two years preceding the filing of this Action. The South Carolina Class is so numerous that the joinder of all class members is impracticable.

118.    South Carolina Named Plaintiff's claims are typical of the claims of the South Carolina Class:

    (i)      South Carolina Named Plaintiff and the South Carolina Class were employed by Bank of America in the sale of residential mortgage and other loan products;

    (ii)     South Carolina Named Plaintiff and the South Carolina Class were paid on a commission basis with recoverable semi-monthly "draw" against commissions pursuant to compensation policies applied to the South Carolina Class as a class;

    (iii)    South Carolina Named Plaintiff and the South Carolina Class worked far in excess of forty hours per week and throughout their employment;

    (iv)    Bank of America violated the FLSA and South Carolina Payment of Wages Act by

systematically misclassifying South Carolina Named Plaintiff and the South Carolina Class as exempt employees, failing to keep records of their time, and failing to track, compute and pay overtime for every workweek in every pay period of their employment; and

(v)     Bank of America violated the FLSA and South Carolina Payment of Wages Act by systematically failing to pay South Carolina Named Plaintiff and the South Carolina Class minimum wage.

119.     Common questions of law and fact predominate over questions that affect only individual members of the South Carolina Class.

120.     Under the facts and circumstances applicable to all South Carolina Class members, Bank of America's classification of South Carolina Class members as exempt employees under the FLSA and South Carolina Payment of Wages Act will be a common question of law that, given Bank of America's class-wide failure to keep time records, compute regular rate of pay, overtime rate and overtime under any statutorily authorized methodology, or at all, and pay overtime, is dispositive of liability. The theory and calculation of damages are prescribed by statute and present questions of law common to the class. The calculation and apportionment of damage claims is arithmetical and easily ascertainable from Bank of America's records of employee tenure.

121.     South Carolina Named Plaintiff will fairly and adequately protect the interests of the South Carolina Class. South Carolina Named Plaintiff's individual interests are significant and coincident with and not antagonistic to the interests of the South Carolina Class and the claims of the South Carolina Named Plaintiff and South Carolina Class are substantively identical. South Carolina Named Plaintiff has retained counsel with extensive experience successfully litigating

27

labor, employment and compensation claims in the financial services industry, extensive experience successfully trying substantial cases against major financial services firms, and significant resources.

122. Management of the South Carolina Class Action presents no significant or special difficulties that would preclude its maintenance as a class action, either internally or as part of the wider FLSA Collective and Class Actions. The South Carolina Class is known to Bank of America and readily identifiable from its records, liability turns on uniform issues of law governed by the South Carolina Payment of Wages Act and FLSA, and the theory and calculation of damages are straightforward and uniform across the South Carolina Class.

123. A class action is superior to other available methods for the fair and efficient adjudication of the claims of South Carolina Class Members. A class action will allow all similarly situated individuals to prosecute their common statutory claims in a single forum simultaneously. Prosecution of hundreds or thousands of separate actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Bank of America. Most seriously, the amount at stake on each individual claim for unpaid overtime and minimum wage makes individual actions economically prohibitive.

**Florida Class**

124. Plaintiff Auerbach brings Count V under Federal Rule of Civil Procedure 23 on behalf of himself and a class consisting of persons who at any time between four years preceding the filing of this Action and final judgment were:

     (i)     employed by Bank of America in the State of Florida as MLOs or, irrespective of title, performed MLO functions;

28

(ii)     paid on a commission basis with a recoverable semi-monthly "draw" against commissions;

(iii)    classified as exempt from maximum time requirements under the FLSA and/or the Florida Minimum Wage Act; and

(iv)    were not paid overtime compensation pursuant to FLSA and/or Florida Minimum Wage Act requirements.

125.    On information and belief, Bank of America has employed at least several hundred Florida Class members over the four years preceding the filing of this Action. The Florida Class is so numerous that the joinder of all class members is impracticable.

126.    Florida Named Plaintiff's claims are typical of the claims of the Florida Class:

(i)      Florida Named Plaintiff and the Florida Class were employed by Bank of America in the sale of residential mortgage and other loan products;

(ii)     Florida Named Plaintiff and the Florida Class were paid on a commission basis with recoverable semi-monthly "draw" against commissions pursuant to compensation policies applied to the Florida Class as a class;

(iii)    Florida Named Plaintiff and the Florida Class worked far in excess of forty hours per week and throughout their employment;

(iv)    Bank of America violated the FLSA and Florida Minimum Wage Act by systematically misclassifying Florida Named Plaintiff and the Florida Class as exempt employees, failing to keep records of their time, and failing to track, compute and pay overtime for every workweek in every pay period of their employment; and

29

(v)     Bank of America violated the FLSA and Florida Minimum Wage Act by systematically failing to pay Florida Named Plaintiff and the Florida Class minimum wage.

127.    Common questions of law and fact predominate over questions that affect only individual members of the Florida Class.

128.    Under the facts and circumstances applicable to all Florida Class members, Bank of America's classification of Connecticut Class members as exempt employees under the FLSA and Florida Minimum Wage Act will be a common question of law that, given Bank of America's class-wide failure to keep time records, compute regular rate of pay, overtime rate and overtime under any statutorily authorized methodology, or at all, and pay overtime, is dispositive of liability. The theory and calculation of damages are prescribed by statute and present questions of law common to the class. The calculation and apportionment of damage claims is arithmetical and easily ascertainable from Bank of America's records of employee tenure.

129.    Florida Named Plaintiff will fairly and adequately protect the interests of the Florida Class. Florida Named Plaintiff's individual interests are significant and coincident with and not antagonistic to the interests of the Florida Class and the claims of the Florida Named Plaintiff and Florida Class are substantively identical. Florida Named Plaintiff has retained counsel with extensive experience successfully litigating labor, employment and compensation claims in the financial services industry, extensive experience successfully trying substantial cases against major financial services firms, and significant resources.

130.    Management of the Florida Class Action presents no significant or special difficulties that would preclude its maintenance as a class action, either internally or as part of the

30

wider FLSA Collective and Class Actions. The Florida Class is known to Bank of America and readily identifiable from its records, liability turns on uniform issues of law governed by the Florida Minimum Wage Act and FLSA, and the theory and calculation of damages are straightforward and uniform across the Florida Class.

131.    A class action is superior to other available methods for the fair and efficient adjudication of the claims of Florida Class Members. A class action will allow all similarly situated individuals to prosecute their common statutory claims in a single forum simultaneously. Prosecution of hundreds or thousands of separate actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Bank of America. Most seriously, the amount at stake on each individual claim for unpaid overtime and minimum wage makes individual actions economically prohibitive.

## COUNT I
### Violation of 29 U.S.C. § 201, *et seq.* (FLSA)
### (Named Plaintiffs and FLSA Collective)

132.    At all relevant times, Bank of America is and has been an "employer" and "enterprise engaged in commerce" for the purposes of the FLSA, including, *inter alia*, 29 U.S.C. §§ 203, 206(a), 207(a) and Named Plaintiffs and FLSA Collective are current and former non-exempt "employees" of Bank of America within the meaning of the FLSA, including, *inter alia*, 29 U.S.C. §§ 203, 206(a), 207(a).

133.    During the three years preceding the date of filing of this Action Bank of America willfully misclassified Named Plaintiffs and FLSA Collective as exempt employees.

134.    Bank of America failed to maintain time records for all MLOs, including for all

31

Named Plaintiffs and FLSA Collective.

135.    Pursuant to the FLSA, including *inter alia*, 29 U.S.C. §§ 206(a), 207(a), Bank of America was required to timely pay Named Plaintiffs and FLSA Collective all wages due, including overtime.

136.    Named Plaintiffs and FLSA Collective were non-exempt employees within the meaning of the FLSA.

137.    Pursuant to the 29 U.S.C. §, 207(a), Bank of America was required to pay Named Plaintiffs and FLSA Collective one and one half times their regular rate of pay for each hour worked in excess of 40 hours in a workweek.

138.    Named Plaintiffs and FLSA Collective routinely worked in excess of 60 hours per workweek.

139.    Bank of America failed to pay overtime for overtime hours worked in any workweek of the three year period.

140.    Bank of America failed to pay minimum wage for each workweek of the first pay period each month and each workweek of the second pay period each month to the extent commissions were less than the total of the "draw" "deficit" and the difference between the "draw" and minimum wage.

141.    Bank of America's conduct in failing to pay Named Plaintiffs and FLSA Collective properly was willful and is not based on any reasonable interpretation of the law.

142.    Bank of America is liable to Named Plaintiffs and FLSA Collective for all unpaid minimum wages, unpaid overtime compensation, and an equal amount of liquidated damages, as well as reasonable attorneys' fees and costs of the action.

## COUNT II
### Violations of the New York Labor Law
### (New York Named Plaintiffs and New York Class)

143.     At all relevant times, Bank of America has been an "employer" and the New York Named Plaintiffs and New York Class have been "employees" for the purposes of the New York Labor Law,

144.     Pursuant to the New York Labor Law, including *inter alia* §§ 191 and 652, 12 N.Y.C.C.R. § 142, Bank of America was required to timely pay Named Plaintiffs and the New York Class all wages due, including overtime.

145.     New York Named Plaintiffs and the New York Class were non-exempt employees within the meaning of the New York Labor Law.

146.     Pursuant to the New York Labor Law, 12 N.Y.C.R.R. § 142-2.2, Bank of America was required to pay Named Plaintiffs and the New York Class one and one half times their regular rate of pay for each hour worked in excess of 40 hours in a workweek.

147.     New York Named Plaintiffs and the New York Class routinely worked in excess of 60 hours per workweek.

148.     Bank of America failed to pay overtime for overtime hours worked in any workweek of the six year period.

149.     Bank of America failed to pay minimum wage for each workweek of the first pay period each month and each workweek of the second pay period each month to the extent commissions were less than the total of the "draw" "deficit" and the difference between the "draw" and minimum wage.

150.     Bank of America is liable to New York Named Plaintiffs and New York Class for

33

all unpaid overtime and minimum wages, liquidated damages in an amount equal to unpaid overtime and minimum wages, prejudgment interest at the New York statutory rate of 9 per cent per annum, and attorneys' fees and costs as required by NYLL § 198-1a.

**COUNT III**
**Violations of the Connecticut Wage Laws**
**(Failure to Pay Overtime and Minimum Wages)**
**(Connecticut Named Plaintiff and Connecticut Class)**

151.    At all relevant times, Bank of America has been an "employer" and the Connecticut Named Plaintiff and Connecticut Class have been "employees" for the purposes of the Connecticut Wage Payment Law.

152.    Pursuant to the Connecticut Wage Payment Law, including *inter alia* Conn. Gen. Stat. Sect.  31-71b and 31-76c, Bank of America was required to timely pay the Connecticut Named Plaintiff and the Connecticut Class all wages and other compensation due, including payment for all overtime worked.

153.    Connecticut Named Plaintiff and the Connecticut Class were non-exempt employees within the meaning of the Connecticut Wage Payment Law.

154.    Pursuant to the Connecticut Wage Payment Law, including inter alia Conn. Gen. Stat. Sect.  31-76c, Bank of America was required to pay the Connecticut Named Plaintiff and the Connecticut Class one and one half times the regular rate of pay for each hour worked in excess of 40 hours in a workweek.

155.    Connecticut Named Plaintiff and the Connecticut Class regularly worked in excess of 60 hours per workweek.

156.    Bank of America failed to pay overtime for overtime hours worked in any workweek of the three year period.

34

157.     Bank of America failed to pay minimum wage for each workweek of the first pay period each month and each workweek of the second pay period each month to the extent commissions were less than the total of the "draw" "deficit" and the difference between the "draw" and minimum wage.

158.     Bank of America is liable to the Connecticut Named Plaintiff and Connecticut Class for an amount twice the full amount of such wages together with costs and reasonable attorneys' fees pursuant to Connecticut Conn. Gen. Stat. Sect. 31-72.

**COUNT IV**
**Violations of the South Carolina Wage Laws**
**(Failure to Pay Overtime and Minimum Wages)**
**(South Carolina Named Plaintiff and South Carolina Class)**

159.     At all times relevant herein, Bank of America has been an "employer" and the South Carolina Named Plaintiff and the South Carolina Class have been "employees" for purposes of the South Carolina Payment of Wages Act.

160.     Pursuant to the South Carolina Payment of Wages Act, including *inter alia* § 41-10-40 of the South Carolina Code of Laws, Bank of America was obligated to timely pay the South Carolina Named Plaintiff and the South Carolina Class all wages due.

161.     South Carolina Named Plaintiff and the South Carolina Class were non- exempt employees within the meaning of the South Carolina Payment of Wages Act.

162.     Pursuant to the FLSA, including *inter alia* 29 U.S.C. § 207, Bank of America was required to pay the South Carolina Named Plaintiff and South Carolina Class one and one half times their regular rate of pay for each hour worked in excess of 40 hours in a workweek.

163.     South Carolina Named Plaintiff and the South Carolina Class regularly worked in excess of 60 hours per workweek.

35

164.     Bank of America failed to pay overtime for overtime hours worked in any workweek of the two year period.

165.     Bank of America failed to pay minimum wage for each workweek of the first pay period each month and each workweek of the second pay period each month to the extent commissions were less than the total of the "draw" "deficit" and the difference between the "draw" and minimum wage.

166.     Bank of America is liable to the South Carolina Named Plaintiff and the South Carolina Class for an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorneys' fees pursuant to § 41-10-80 of the South Carolina Code of Laws.

**COUNT V**
**Violations of the Florida Wage Laws**
**(Failure to Pay Overtime and Minimum Wages)**
**(Florida Named Plaintiff and Florida Class)**

167.     At all relevant times, Bank of America has been an "employer" and the Florida Named Plaintiff and Florida Class have been "employees" for the purposes of the Florida Minimum Wage Act.

168.     Pursuant to Florida Minimum Wage Act, including *inter alia* Florida Minimum Wage Act, § 448.110 and Fla. Stat., F.S.A. Const. Art. 10 § 24, Bank of America was obligated to pay the Florida Named Plaintiff and the Florida Class Florida's minimum wage.

169.     Florida Named Plaintiff and the Florida Class were non-exempt employees within the meaning of the Florida Minimum Wage Act.

170.     Pursuant to the FLSA, including inter alia 29 U.S.C. § 207, Bank of America was required to pay the Florida Named Plaintiff and Florida Class one and a half times their regular rate of pay for each hour worked in excess of 40 hours in a workweek.

36

171.    Florida Named Plaintiff and the Florida Class regularly worked in excess of 60 hours per workweek.

172.    Bank of America failed to pay overtime for overtime hours worked in any workweek of the four year period

173.    Bank of America failed to pay minimum wage for each workweek of the first pay period each month and each workweek of the second pay period each month to the extent commissions were less than the total of the "draw" "deficit" and the difference between the "draw" and minimum wage.

174.    Bank of America is liable to the Florida Named Plaintiff and the Florida Class for the full amount of unpaid wages that Bank of America unlawfully withheld plus the same amount as liquidated damages, together with reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiffs, on behalf of themselves and the FLSA Collective, pray this Court for the following relief:

A.    An order, at the earliest possible time, approving notice of this Collective Action and requiring Defendants to provide Named Plaintiffs with the names, addresses, telephone numbers, and email addresses of each FLSA Collective member for the purpose of issuing notice to the FLSA Collective.  Such notice shall at a minimum inform members of the filing and venue of this Action, the nature of this Action and the right of each member to join the Action; and

B.    Judgment for Named Plaintiffs and the FLSA Collective awarding unpaid overtime and minimum wages, liquidated damages in an amount equal to unpaid

37

overtime and minimum wages, prejudgment interest, attorneys' fees and costs, and such other relief as is just and equitable.

**WHEREFORE**, Named Plaintiffs, on behalf of themselves and the New York, Florida, South Carolina, and Connecticut Classes, pray this Court for the following relief:

A. An order, at the earliest possible time, certifying this action as a class action pursuant to Federal Rule of Civil Procedure 23 and

 i. certifying the New York Class, designating Named New York Plaintiffs class representatives and designating Plaintiffs' counsel Class Counsel;

 ii. certifying the Florida Class, designating Named Florida Plaintiff class representative and designating Plaintiffs' counsel Class Counsel;

 iii. certifying the South Carolina Class, designating Named South Carolina Plaintiff class representative and designating Plaintiffs' counsel Class Counsel;

 iv. certifying the Connecticut Class, designating Named Connecticut Plaintiff class representative and designating Plaintiffs' counsel Class Counsel; and

B. Judgment for

 i. Named New York Plaintiffs and the New York Class awarding damages, statutory penalties, prejudgment interest and attorneys' fees and costs pursuant to the New York Labor Law;

 ii. Named Florida Plaintiffs and the Florida Class awarding damages, statutory penalties, prejudgment interest and attorneys' fees and costs pursuant to the Florida Minimum Wage Act;

38

       iii.     Named South Carolina Plaintiffs and the South Carolina Class awarding damages, statutory penalties, prejudgment interest and attorneys' fees and costs pursuant to the South Carolina Payment of Wages Act;

       iv.     Named Connecticut Plaintiff and the Connecticut Class awarding damages, statutory penalties, prejudgment interest and attorneys' fees and costs pursuant to the Connecticut Wage Payment Law; and

C.     Such other relief as is just and equitable.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Named Plaintiffs demand a trial by jury.

Dated: November 30, 2023

**Teague Campbell Dennis & Gorham, LLP**

/s/ Jacob Wellman
Jacob Wellman – NC State Bar 28853
4700 Falls of Neuse Road
Suite 450
Raleigh, NC 27609
Telephone: 919.719.4734
Facsimile: 919.873.1814
Email: JWellman@teaguecampbell.com

*Local Counsel to Plaintiffs*
*Russell Pfeffer, David Dessner,*
*Adam Sherman, Frank Cronin,*
*Roger Rojas, Jason Auerbach,*
*and all others similarly situated*

**Lax & Neville, LLP**

/s/ Barry R. Lax
Barry R. Lax
350 Fifth Ave.
Suite 4640
New York, NY 10118
Telephone: 212-696-1999
Facsimile: 212-566-4531
Email: blax@laxneville.com
*Pro Hac Admission Pending*

*Attorneys for Plaintiffs*
*Russell Pfeffer, David Dessner,*
*Adam Sherman, Frank Cronin,*
*Roger Rojas, Jason Auerbach,*
*and all others similarly situated*

39