IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

RUSSELL PFEFFER, DAVID DESSNER,
ADAM SHERMAN, FRANK CRONIN,
ROGER ROJAS, JASON AUERBACH,
GRACE BOZICK, MUHAMED VRLAKU
and ALL OTHERS SIMILARLY SITUATED,

                Plaintiffs,

    v.

BANK OF AMERICA CORPORATION and
BANK OF AMERICA N.A.,

                Defendants.

Civ No. 3:23-cv-813

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL DISCOVERY**

Named Plaintiffs Russell Pfeffer ("Pfeffer"), David Dessner ("Dessner"), Jason Auerbach ("Auerbach"), Adam Sherman ("Sherman"), Frank Cronin ("Cronin"), Rojer Rojas ("Rojas"), Grace Bozick ("Bozick") and Muhamed Vrlaku ("Vrlaku"), by and through their counsel Lax & Neville LLP, hereby submit this Memorandum of Law in Opposition to Defendants' Motion to Compel Discovery.

## I. DISCOVERY BACKGROUND

On May 3, 2024 Defendants served their First Set of Interrogatories and Request for Production of Documents on the eight (8) Named Plaintiffs and, in violation of the Court's Case Management Order (Doc 23) ("CMO"), on twenty (20) Opt-In Plaintiffs.[1] Named Plaintiffs timely served responses and objections on July 11. Contrary to Defendants' boilerplate representation that Plaintiffs "offered largely boilerplate, improper and baseless objections" (Doc 123-1 (MTC) at 2), Plaintiffs initially agreed to produce documents responsive to 12 of 22 requests (Doc 123-3). Contrary to Defendants' representation that Plaintiffs subsequently failed to produce or supplement their production of documents, and their inexplicable motion to compel production on 7 requests over which there is no dispute (Doc 123-1), seven of the Named Plaintiffs completed their production by November 20 and Mr. Rojas, who Named Respondents had informed Defendants was the only Named Plaintiff who was still searching for documents, produced his sole outstanding W-2s on December 19 (along with one additional W-2 that Named Plaintiff Bozick subsequently located). Contrary to Plaintiffs' relentless insinuation on the size of Plaintiffs' production (Doc 123-1 at 3-4), as Plaintiffs noted in their responses (Doc 123-3) and underlined confirmation that all responsive documents in their possession have been produced (Doc 123-6), and as Defendants neglect to inform the Court in their Motion, virtually all of these requests seek

---

[1] *See* Doc 23 (Case Management Order) at fn 2, ¶ IV(A).

documents that are primarily or solely in the possession of Defendants, not Plaintiffs. *See, e.g,* Doc 123-3 at Requests 1, 3, 5, 10, 14, 15, 16, 17 and 18. *See Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 234 (D.N.J. 2013) (finding that in an exemption case "much of the key factual information defendants need from each plaintiff" is in a defendant's possession).

Where Plaintiffs objected, it was on specific grounds of burden, overbreadth or irrelevance and to requests that manifestly failed to meet Defendants' burden under Rule 26(b)(1). For example:

> **Request No. 4:** All documents that refer to, relate to, discuss or describe how Plaintiff performed any mortgage loan officer position held with the Bank from January 1, 2017 to the present.
>
> [Interrogatory] 12. Please provide the name, address, telephone number, place of employment and job title of any person who has, claims to have or whom you believe may have knowledge or information pertaining to your work schedule and how you performed your job in the course of your employment with the Bank since January 1, 2017.
>
> **Request No. 5:** All documents that reflect in any way Plaintiff's hours worked with the Bank from January 1, 2017 to the present
>
> **Request No. 6:** All documents that relate to any application for employment made or submitted by Plaintiff from January 1, 2017 to the present, including but not limited to any cover letter(s) or resume(s).
>
> **Request No. 7:** All documents that refer to, relate to, discuss or describe your employment prior to the Bank, including but not limited to any offer letters, employment agreements, commission plan/incentive plan summaries, and commission and incentive plans.
>
> **Request No. 8:** All documents that refer to, relate to, discuss or describe your employment, if applicable, after the Bank, including but not limited to any offer letters, employment agreements, commission plan / incentive plan summaries, and commission and incentive plans.
>
> [Interrogatory] 11. Please identify any and all civic, social, community, and/or professional organizations of which you have been a member or with which you have been affiliated since January 1, 2017, including the dates of membership or affiliation.

> **Request No. 9:** All documents [from 2017 to the present] that refer to, relate to, discuss or describe your membership in or affiliation with any civic, social, community, and/or professional organizations identified in response to Interrogatory No. 11.

> **Request No. 12:** All documents that contain or refer to any statement, opinion or information of any person concerning all matters that are the subject of this Action.

> **Request No. 14:** All documents that relate to your employment with the Bank.

> **Request No. 19:** Plaintiff's federal and state tax returns (including all attachments and schedules thereto) for the tax years 2017 to the present.

Doc 123-3. *See also, e.g.,* Requests 3, 10, 15-18, 21-22 and Interrogatories 12, 13, 14, 15 and 16.

Even with respect to many irrelevant and/or overly broad requests, and notwithstanding, as set forth below, Bank of America's refusal to explain, or provide authority for, their <u>possible</u> relevance to its exemption defense, Plaintiffs either initially or subsequently offered to search for and produce some or all documents (including Requests 5 and 14, above ) or repeatedly sought to work with Bank of America to define a manageable universe of documents or information (including Requests 4, 5 and 14 and Interrogatory 12 above). As Plaintiffs' counsel expected that a call between counsel would eliminate or significantly narrow the parties' dispute, on August 9, 2024 Plaintiffs informed Defendants that they were preparing a discovery letter that would supplement and amend certain responses and proposed that in the interim the parties meet and confer to address other requests.

During an August 13 telephone conference—the <u>sole</u> meet and confer Bank of America has agreed to on any subject through the entire discovery process thus far—Plaintiffs' counsel attempted to discuss the requests and interrogatories that, while in Plaintiffs' view legally irrelevant to Bank of America's exemption defense and grossly overbroad or impossible to answer as written, Plaintiffs' counsel expected the parties could revise to reach what Bank of America purports to

need and, relevance aside, Plaintiffs could reasonably produce.[2] Bank of America's counsel categorically refused to discuss any request or interrogatory and demanded that Plaintiffs serve a discovery letter litigating their objections, including those Plaintiffs were specifically offering to negotiate. During the same call, Bank of America's counsel also declined to meet and confer on the scope of opt-in discovery, initially on the ground that Bank of America likely considered it premature. As discussed in more detail in Doc 122, Bank of America sent an email the next day renewing its demand that opt-in plaintiffs answer its written discovery and demanded authority for Plaintiffs' observation that opt-in plaintiffs were not yet subject to discovery, leading to 2 weeks of emails between the parties and two threats by Bank of America to file a motion to compel.

On August 26, Plaintiffs duly sent Bank of America a discovery letter. *See* Doc 123-6. Among other things, the August 26 Letter confirmed, more than three months before Bank of America filed its Motion seeking to compel "Documents [Plaintiffs] Have Represented That They Would Produce Since August,"[3] that:

> Named Plaintiffs Pfeffer, Sherman, Cronin and Auerbach have produced the W2s and paystubs received from Defendants that they could locate (*see* Pfeffer v. BOA 00000001 – 00000051). Named Plaintiffs Dessner, Rojas, Bozick and Vrlaku are still in the process of searching for such documents and any that are located will be produced. With respect to the other documents that Named Plaintiffs (other than

---

[2] For example, Plaintiffs objected to Interrogatory 12, above, on the grounds that it reached back nearly four years before the FLSA period and "would require the identification of every single employee and customer of Defendants with whom Plaintiff came in contact within the performance of his job duties with Defendants." It would also require the identification of friends, family members and numerous other third-parties, such as real estate brokers and lawyers. During the August 13 call, Plaintiffs' counsel explained why Plaintiffs could not reasonable answer this Interrogatory as written and suggested that Bank of America's counsel may not even have intended to sweep this broadly. Bank of America's counsel confirmed that the Interrogatory was intended to reach all of this information and insisted that Bank of America was entitled to it from every Plaintiff—named or opt-in—from 2017 through the present. When Plaintiffs' counsel attempted to discuss a narrower time frame and more specific scope, Bank of America, again, refused to discuss Interrogatory 12.

[3] Doc 123-1 (MTC) at 5-6 (identifying all or part of Request Nos. 3, 5, 10, 15, 16, 17, 18, 20, 21, and 22).

Mr. Rojas) agreed to produce, please be advised that the Named Plaintiffs have conducted a diligence search but have not been able to locate responsive documents. Named Plaintiff Rojas is continuing his search and any responsive documents that are located will be produced.

*Id.* at 4.  With respect to partially disputed requests identified by Bank of America in its Motion (Doc 123-1 at 5-6), Plaintiffs specifically confirmed their search to the extent of their agreement and reiterated that they lack access to Bank of America systems containing virtually all of the documents Bank of America seeks across its requests.:

> With respect to Request 5, Named Plaintiffs agreed to produce **"portions of any diaries, calendars, appointment books, or other logs of dates and/or events that reflect overtime hours worked** by Plaintiff that can be located after a diligent search, **if any,"** and, as we explained to you, **almost certainly do not have formal or systematic documents of this kind**, as **they used Bank of America's own systems and no longer have access to them**. Named Plaintiffs have searched for and **do not have these documents.**

123-6, 5.

> While we agree that the "calculation of damages are straightforward"—rate of pay X 1.5 X overtime hours worked—Named Plaintiffs **do not have access to documents and information necessary** to accurately set forth their specific damages. **Bank of America**, by contrast, **has complete compensation records** and was statutorily required to keep records of hours and overtime hours worked and calculate and keep records of weekly rates of pay. Moreover, Named **Plaintiffs no longer have access to and Bank of America has exclusive control over Named Plaintiffs' emails, calendars, phone records, and other records of their daily activities,** all of which will show that they routinely worked well in excess of 40 hours per week every week during the relevant time period.

*Id.* at 6 (emphasis added).  Named Plaintiffs supplemented their production with Named Plaintiffs Dessner's, Bozick and Vrlaku's documents on October 8 and November 20 and Named Plaintiff Rojas (and an additional document for Bozick) on December 19.

With respect to the same partially disputed and disputed requests Plaintiffs attempted to negotiate during the August 14 meet and confer, Plaintiffs reiterated the problems of relevance and, in particular, breadth and burden, but repeatedly offered to meet and confer:

Furthermore, Bank of America clearly has access to numerous documents to which Named Plaintiffs do not, including the kind of records and communications that are actually relevant to the claims and defenses in this case. That said, as we attempted to discuss during our August 14 call, we are open to searching for and producing additional documents, if any, in response to narrower, more specific requests, and we remain willing to meet and confer.

*Id.* (referring to RFPs 1, 4-5, 16-18).

Regardless, as we also discussed, these interrogatories are extremely broad and general, call for long, narrative answers that are generally disfavored or more appropriate for deposition, and seek legal conclusions that are, at any rate, already set forth in detail by the Amended Complaint. As we suggested during our August 14 call, the parties can likely resolve these issues by negotiating narrower, more specific requests. We remain willing to meet and confer.

*Id.* (referring to RFIs 13-16).

As we attempted to discuss during our August 14 call and remain willing to discuss in a meet and confer, Bank of America should be able to revise these requests to seek a specific, reasonable universe of documents and information.

*Id.* (referring to RFP 14, RFI 12).

Bank of America did not respond to this or subsequent attempts to meet and confer on August 16 and August 26. On September 27, Bank of America sent a second discovery letter it characterizes in its Motion as "an attempt to reach a compromise on at least some of the discovery matters without involving this Court." *See* Doc 123-1 (MTC) at 4. This is not a good faith characterization of Bank of America's September 27 Letter, which begins by flatly stating that:

Further, given your conduct and misrepresentations following our previous telephone conversations, we will not confer with you again via telephone regarding the deficiencies we have brought to your attention in prior correspondence and below.

Doc 123-7 at 1.

Bank of America did not identify, still has not identified to Plaintiffs and does not identify to the Court, in either this Motion or the Joint Motion on Opt-In Discovery, the alleged "conduct and misrepresentations following our previous telephone conversations [sic]." On this Motion,

6

Bank of America does not even disclose its express refusal to meet and confer. Despite repeatedly certifying to the Court that it made "repeated efforts to meet and confer," "compromise," and, ostensibly through its September 27 Letter, "attempt[ed] to reach a compromise on at least some of the discovery matters without involving this Court," Bank of America refused to substantively meet and confer during the parties' <u>sole</u> "telephone conversation" on August 14, which was initiated by Plaintiffs, before flatly refusing to <u>ever</u> meet and confer six weeks later.

With respect to any purported "compromise" in the September 27 Letter itself, as set forth more fully below, Bank of America merely reiterated its position that it was entitled to all discovery sought by its original requests and interrogatories, including from opt-in plaintiffs. Bank of America made no effort to materially narrow, revise or clarify any request to respond to the issues raised by Plaintiffs, and the only requests on which it even purported to offer a "compromise" (Document Requests 6, 7 and 8) it in fact simply restated:

> [Bank of America] is willing to limit these requests [6, 7, 8] to any documents that describe **how plaintiffs were compensated** in mortgage loan officer positions from January 1, 2017 to present, such as **offer letters, employment agreements, commission / incentive plans or summaries** of those plans, **and documents that describe their role and activities when working for the Bank.**

(*Id*. at 5).

> Request No. 6: All documents that relate to any application for employment made or submitted by Plaintiff from January 1, 2017 to the present, including but not limited to any **cover letter(s) or resume(s)**.

> Request No. 7: All documents that refer to, relate to, discuss or describe your employment prior to the Bank, including but not limited to any **offer letters, employment agreements, commission plan/incentive plan summaries, and commission and incentive plans**.

> Request No. 8: All documents that refer to, relate to, discuss or describe your employment, if applicable, after the Bank, including but not limited to any **offer letters, employment agreements, commission plan / incentive plan summaries, and commission and incentive plans**.

Doc 123-3 (emphasis added).

Plaintiffs subsequently sought to meet and confer with Bank of America on October 7, November 6, which Bank of America ignored. Leaving aside that it has grossly misstated the discovery record and actual outstanding issues between the partis, Bank of America failed and ultimately <u>refused</u> to meet its obligations under Rule 37(a)(1).

## II.    ARGUMENT

### RFP 3, 5, 10, 15, 16, 17, 18, 20, 21 and 22

Bank of America inexplicably moves to compel production of "the documents they have represented that they would produce since August" responsive to Requests 3, 5, 10, 15, 16, 17, 18, 20, 21 and 22:

> Named Plaintiffs have represented that in response to Request Nos. 3, 5, 10, 15, 16, 17, 18, 20, 21, 22 they would produce the following documents: (A) "portions of any diaries, calendars, appointment books, or other logs of dates and/or events that reflect overtime hours worked," (B) "any communications with the Bank's management or supervisory employees which relate to any fact relevant to Plaintiff's allegations," (C) "any communications with the Bank's human resources department which relate to any fact relevant to Plaintiff's allegations," (D) "any communications with any employee of the Bank which relate to any fact relevant to Plaintiff's allegations," (E) written statements and/or affidavits obtained by Named Plaintiffs or their agents regarding any fact, allegation, or defense in the action; (F) documents regarding Named Plaintiffs' contention the Bank willfully failed to pay them; and (G) documents regarding Named Plaintiffs' contention the Bank willfully misclassified them. (Exh. B at Nos. 3, 5, 10, 15, 16, 17, 18, 20, 21, 22.)

> Despite these representations, **they have produced none of these documents**. The **Named Plaintiffs have had since May 2024 to search for** and collect these documents. Given **their repeated empty promises to supplement their responses to these requests and ample time to do so**, Defendants respectfully request that Named Plaintiffs be compelled to: (1) respond to Requests 3, 5, 10, 15, 16, 17, 18, 20, 21, 22 **with responsive documents**; or (2) if **no such responsive documents can be located following a diligent search, amend their responses to reflect the same.**

Doc 123-1 at 5-6 (emphasis added).

As set forth above, Plaintiffs informed Bank of America on <u>August 26</u> that "Pfeffer, Sherman, Cronin and Auerbach have produced the W2s and paystubs received from Defendants that they could locate" and, "with respect to **the other documents** that Named Plaintiffs (other than Mr. Rojas) agreed to produce," the "Named Plaintiffs have conducted a diligent search but have not been able to locate responsive documents." Doc 123-6 (Pl. August 26, 2024 Letter) at 4. Plaintiffs not only stated that they had not located responsive documents in the categories identified by Bank of America but reiterated the obvious reasons, as Plaintiffs had noted during both the abortive August 14 meet and confer and their Responses and Objections, Plaintiffs would be extremely unlikely to have these documents in their possession. *See* 4-6, *supra*. This is self-evident from the nature of the document sought and certainly known to Bank of America, which has exclusive control over the electronic devices, databases, payroll and other compensation portals, scheduling, email and messaging accounts, and phones and phone logs Bank of America knows contain the documents and information it is purporting to seek from Plaintiffs, former employees who have none of them.

As for the alleged "repeated empty promises to supplement their responses to these requests," this, too, is a willful misrepresentation:

> Named Plaintiffs Dessner, Rojas, Bozick and Vrlaku are still in the process of searching for such documents ["W2s and paystubs received from Defendants"] and any that are located will be produced. With respect **to the other documents** that **Named Plaintiffs** (other than Mr. Rojas) agreed to produce, please be advised that the **Named Plaintiffs** have conducted a diligent search but have not been able to locate responsive documents. Named Plaintiff Rojas is continuing his search and any responsive documents that are located will be produced.

Doc 123-6 at 4 (emphasis added). This was the entire extent of the "supplemental production" at issue as of August 26. Mr. Dessner and Mr. Bozick produced W2s or a paystub on October 8 and Mr. Vrlaku produced a W2 on November 20. Mr. Rojas produced his W2s, the only responsive

documents he could locate, on December 19 (together with an additional W2 that Ms. Bozick subsequently located.

Bank of America knew before it "respectfully request[ed]" that the Court compel "Named Plaintiffs to respond to Requests 3, 5, 10, 15, 16, 17, 18, 20, 21, 22 with responsive documents" that Named Plaintiffs had produced the very limited compensation documents in their possession. Bank of America knew before it "respectfully request[ed]" that the Court compel "Named Plaintiffs" to "amend their responses to reflect" that "no such responsive documents can be located following a diligent search" that as to all other requests Named Plaintiffs had "advised that the Named Plaintiffs have conducted a diligent search but have not been able to locate responsive documents" four months ago. Bank of America knew before it repeatedly represented to the Court that Named Plaintiffs had made "repeated empty promises" to and "representations" that they would to "supplement" their production with numerous internal Bank of America documents and communications that Plaintiffs made no such promises, made no such representations, confirmed months ago that they had searched for and did not locate responsive documents, and could never supplement their production with numerous internal Bank of America documents and communications because they do not and could not have those documents in their possession.

Bank of America nevertheless filed its Motion, in which the first thing it told the Court, was that Plaintiffs "promis[ed] repeatedly to supplement some of their document productions" and failed to do it. Bank of America's Motion with respect to these requests is moot and should be denied, with costs pursuant to FRCP 37(a)(5)(B).

## RFP 4, 6 and 8 and Interrogatory 12

Bank of America paraphrases these Requests in its Motion. In full, Bank of America seeks:

**Request No. 4**: All documents that refer to, relate to, discuss or describe how Plaintiff performed any mortgage loan officer position held with the Bank from

January 1, 2017 to the present.

**Request No. 6**: All documents that relate to any application for employment made or submitted by Plaintiff from January 1, 2017 to the present, including but not limited to any cover letter(s) or resume(s).

**Request No. 8**: All documents that refer to, relate to, discuss or describe your employment, if applicable, after the Bank, including but not limited to any offer letters, employment agreements, commission plan / incentive plan summaries, and commission and incentive plans.

[Interrogatory] 12.  Please provide the name, address, telephone number, place of employment and job title of any person who has, claims to have or whom you believe may have knowledge or information pertaining to your work schedule and how you performed your job in the course of your employment with the Bank since January 1, 2017.

Doc 123-3.

With respect to Requests 4 and 6, Bank of America argues that "[h]ow Named Plaintiffs performed their mortgage loan officer positions with Defendants gets at the very heart of the issues in this case – that is, whether the manner in which Named Plaintiffs performed their jobs supports their exempt classification under the FLSA."  Doc 123-1 (MTC) at 7.  Bank of America then refers solely to "documents describing how the Named Plaintiffs performed these roles with Bank of America" and specifically "documents submitted with any employment application, such as resumes and cover letters, in which Named Plaintiffs may have described the manner in which they performed their mortgage loan officer roles" *Id.*

Leaving aside relevance, particularly given Bank of America's failure to identify the exemption or exemptions it applied to any of the Plaintiffs or contends apply now or to limit any of its requests to job duties and performance actually material to the putative exemption(s), this is a gross understatement of what Bank of America sought and continues to seek in Request 4. Documents that "relate to" or "refer to" "how Plaintiff performed any mortgage loan officer position held with the Bank from January 1, 2017 to the present" would include every document

11

or communication with anyone dating back seven years that was about work. Plaintiffs already agreed to produce, to the extent in their possession, "calendars, appointment books, call logs, notes, phone records, emails, texts, performance reports, reviews, rankings and evaluations," which Bank of America, and not Plaintiffs, already have. Doc 123-3. Beyond this, undertaking a search for generic "relate to" or "refer to" "how Plaintiff performed," while manifestly unlikely to turn up responsive professional documents and communications that were sent, received and stored in Bank of America's systems, would be vastly overbroad and burdensome, which Bank of America fails to address. As Plaintiffs explained in their August 26 Letter, "Request 4 likewise encompasses Named Plaintiffs' entire employment by Bank of America, including for more than three years outside the time period." Doc 123-6 at 6. In response, Bank of America did not contend that Request 4 was narrower than this or offer to narrow Request 4 to "documents describing how the Named Plaintiffs performed these roles," let alone the self-descriptions sought by Request 6, but insisted that it was entitled to everything:

> Request No. 4 seeks documents that refer to, relate to, or discuss how each plaintiff performed his or her job as a mortgage loan officer with the Bank from January 1, 2017, to the present. Plaintiffs objected that this Request was overbroad in temporal scope and that the Bank has superior access to the documents.
>
> Putting aside plaintiffs' baseless objection that this Request is not properly limited in temporal scope, plaintiffs' refusal to provide any documents in response to this request is improper. How plaintiffs performed their jobs is at the heart of this lawsuit, and these documents must be produced.

Doc 123-7 at 4.

In its Motion, Bank of America does not even go this far, not only failing to mount an argument that Request 4 is relevant and proportional—particularly given its undisputed vastly superior access to documents and information—but failing to properly describe it to the Court. Likewise, Interrogatory 12, which Bank of America characterizes as seeking "the names and

contact information who have information regarding Named Plaintiffs' schedules and job duties while employed by Bank of America." Doc 123-1 at 6-7. In reality, as Plaintiffs pointed out and Bank of America did not dispute when Plaintiffs repeatedly sought to meet and confer to define a reasonable universe of information, Interrogatory 12 "would require the identification of every single Bank of America employee with whom they worked at any time over a seven year period, including managers, coworkers, and underwriting, compliance and other personnel, every single customer, prospective customer, broker, and attorney they spoke to or dealt with at any time over a seven year time period, and numerous friends, family members and acquaintances with even passing familiarity with their work at any time over, again, a seven year time period." Doc 123-6 at 6. Bank of America's sole written response, like its Motion, did not narrow Interrogatory 12 or indicate any willingness to discuss it:

> Interrogatory 12 similarly seeks relevant information to which the Bank is entitled – that is, the names and contact information **for individuals who the plaintiffs believe have knowledge or information regarding** the plaintiffs' work schedules and **how they performed their jobs**. Instead of responding to this standard interrogatory, you are standing on your objection that this Interrogatory is overbroad, unduly burdensome, and not proportional to the needs of the case. The Bank is entitled to discovery regarding the witnesses whom plaintiffs believe can testify regarding their contentions. Please amend the responses to Interrogatory 12 accordingly.

Doc 123-7 at 3-4 (emphasis added).

Plaintiffs specifically identified Request 4 and Interrogatory 12 as among those the parties could likely agree to reasonably narrow and define, both during the abortive August 14 meet and confer and in their August 26 Letter. *See* 123-6 at 5-6. Bank of America refused to meet and confer on either one.

With respect to Request 8, which Bank of America again mischaracterizes, Bank of America argues that "[t]hese documents are relevant to Named Plaintiffs' broad assertions

regarding the state of the mortgage lending industry, including **their allegation in the Amended Complaint suggesting that Defendants are the only company that classifies loan officers as exempt under the FLSA. (Doc. No. 8 at ¶ 3.)** Named Plaintiffs should, therefore, be compelled to produce these documents to test these allegations, especially if Named Plaintiffs plan to rely on these allegations to support their contention that their classification as exempt was willful." Doc 123-1 at 7-8 (emphasis added). This extremely dubious rationale is, at any rate, a flat misrepresentation:

> 3. Bank of America could not possibly have been unaware in 2016, and cannot possibly be unaware as it continues this policy today, that MLOs paid on a commission basis are entitled to overtime. The same misclassification of the same category of employees has been uniformly rejected by the courts **and specifically (and famously) ruled out by the Department of Labor in a 2010 Interpretation unanimously upheld by the Supreme Court** in 2015. **It has also cost Bank of America's peers hundreds of millions of dollars.**

Doc 8 (Amended Complaint) ¶ 3 (emphasis added).

Nowhere did Plaintiffs allege that "Defendants are the only company that classifies loan officers as exempt under the FLSA" and in the very paragraph cited by Bank of America Plaintiffs necessarily refer to other companies misclassifying loan officers as exempt under the FLSA. Nor does Bank of America explain what its ludicrously overbroad, invasive and self-evidently sensitive request for "[a]ll documents that **refer to**, **relate to**, **discuss** or describe your employment, if applicable, after the Bank" (emphasis added) would establish about the "state of the mortgage industry" in any event, or to what part of its defense the "state of the mortgage industry" is relevant. Even if Bank of America were seeking to compel only documents and information sufficient to show whether Plaintiffs are employed as loan officers and classified by a subsequent employer as exempt or non-exempt, and it is seeking vastly more than that, there were 5,103 mortgage lending institutions in the US market in 2023, including 2,516 Bank mortgage lending institutions and 839

Large Bank mortgage lending institutions.  *See* Consumer Financial Protection Bureau, "2023 Mortgage Market Activity and Trends" (December 2024).[4]

The compliance or non-compliance of these eight Named Plaintiffs' subsequent employers with the FLSA is not competent evidence to establish "industry standards," and Bank of America does not indicate the claim or defense to which it contends "industry standards" are relevant, if it contends "industry standards" are relevant.  Bank of America certainly does explain how or even concede that it would be probative of its exemption defense if, for example, some or all of Named Plaintiffs' subsequent employers classified loan officers as non-exempt, and that fact would presumably not cause Bank of America to admit it misclassified its loan officers and pay them their overtime.

Bank of America's Request 8 is far broader than past or future classification or misclassification, Bank of America has made no attempt to narrow or define it, and Bank of America is seeking to compel a vast array of documents and communications that it does not even attempt to argue are relevant or proportionate.

Defendants' Motion to Compel with respect to RFP 4, 6 and 8 and Interrogatory 12 should be denied.

## RFP 9 and Interrogatory 11

Request 9 seeks "[a]ll documents that refer to, relate to, discuss or describe your membership in or affiliation with any civic, social, community, and/or professional organizations identified in response to Interrogatory No. 11."  Interrogatory 11 requires Plaintiffs to "identify any and all civic, social, community, and/or professional organizations of which you have been a

---

[4]    *Available at*    https://files.consumerfinance.gov/f/documents/cfpb_2023-mortgage-market-activity-and-trends_2024-12.pdf.

member or with which you have been affiliated since January 1, 2017, including the dates of membership or affiliation."

Defendants argue that "[w]hether and how Named Plaintiffs may have networked and engaged with various civic and community organizations outside of their home or office in order to generate business is relevant to how they did their job duties for Bank of America and whether their exempt classification was proper." Doc 123-1 at 9. If this is what Bank of America were seeking, it would have served a still objectionable but at least rationally related interrogatory that asked whether a Named Plaintiff "networked or engaged…in order to generate business" at any "civic, social, community, and professional organization" and, if so, to identify it. Bank of America would not have served Interrogatory 8, which, despite repeated objections by Plaintiffs, seeks identification of any civic, social, community, or professional organization to which a Named Plaintiff may have donated his time over a seven year period—from the PTO to the library board to the soup kitchen to the NRA or the Communist Party—regardless of whether Named Plaintiffs used such organizations to "network" or "generate business." Bank of America would not then, moreover, have sought "all documents that refer to, relate to, discuss or describe your membership in or affiliation with" every such organization.

Interrogatory 8 and Request 9 would obviously sweep in political, religious, activist, and numerous other affiliations that are private, potentially sensitive and certainly none of Named Plaintiffs' former employer's business. Despite every opportunity to amend Interrogatory 8 and withdraw Request 9, Bank of America has, as with all its requests, maintained them as written for the obvious purpose of harassing, intimidating and potentially embarrassing Named Plaintiffs and, as Bank of America telegraphs in Footnote 2, the opt-in plaintiffs.

16

Finally, even if Bank of America had sought only information about networking in Interrogatory 8 and Request 9, it refused to offer Plaintiffs and still offers the Court absolutely no authority or argument that this still invasive, overly broad and, over seven years, burdensome information is probative of any exemption defense. Bank of America purports to rely on 29 C.F.R. § 541.503 "Promotion Work," which it defines on its own authority to include "participating in chamber of commerce meetings, industry meetings, and other organizations to solicit clients and referrals outside the office." Doc 123-1, 9. The rule itself does not refer to "participating" in any industry meetings, let alone "networking" at church, and the examples of "promotion work" it gives, and the facts of virtually all cases considering it, are very different:

(a) Promotion work is one type of activity often performed by persons who make sales, which may or may not be exempt outside sales work, depending upon the circumstances under which it is performed. Promotional work that is actually performed incidental to and in conjunction with an employee's own outside sales or solicitations is exempt work. On the other hand, promotional work that is incidental to sales made, or to be made, by someone else is not exempt outside sales work. An employee who does not satisfy the requirements of this subpart may still qualify as an exempt employee under other subparts of this rule.

(b) A manufacturer's representative, for example, may perform various types of promotional activities such as putting up displays and posters, removing damaged or spoiled stock from the merchant's shelves or rearranging the merchandise. Such an employee can be considered an exempt outside sales employee if the employee's primary duty is making sales or contracts. Promotion activities directed toward consummation of the employee's own sales are exempt. Promotional activities designed to stimulate sales that will be made by someone else are not exempt outside sales work.

(c) Another example is a company representative who visits chain stores, arranges the merchandise on shelves, replenishes stock by replacing old with new merchandise, sets up displays and consults with the store manager when inventory runs low, but does not obtain a commitment for additional purchases. The arrangement of merchandise on the shelves or the replenishing of stock is not exempt work unless it is incidental to and in conjunction with the employee's own outside sales. Because the employee in this instance does not consummate the sale nor direct efforts toward the consummation of a sale, the work is not exempt outside sales work.

17

29 C.F.R. § 541.503.

As is evident from the text of 541.503(a) itself, the regulation does not provide that "[p]romotional work that is actually performed **incidental** to and **in conjunction with** an **employee's own outside sales or solicitations**" may establish the outside sales exemption, as Bank of America contends, but that an employee to whom the outside sales exemption otherwise applies "does not lose the exemption" by spending time on "incidental" promotional work:

> An outside sales employee must be customarily and regularly engaged "away from the employer's place or places of business." The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home. Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property. However, **an outside sales employee does not lose the exemption by displaying samples in hotel sample rooms during trips from city to city; these sample rooms should not be considered as the employer's places of business. Similarly, an outside sales employee does not lose the exemption by displaying the employer's products at a trade show. If selling actually occurs, rather than just sales promotion, trade shows of short duration (i.e., one or two weeks) should not be considered as the employer's place of business.**

29 C.F.R. § 541.502 (emphasis added).  This is also evident from *Hartman v. Prospect Mortg., LLC*, 11 F. Supp. 3d 597, 604 (E.D. Va. 2014), cited by Bank of America, in which the court cited the 541.503 not for the proposition that "a loan officer was properly classified as exempt under the outside sales exemption, in part, because of the plaintiff's participation in chamber of commerce meetings" (Doc 123-1, 9) but in response to plaintiff's argument that "promotional work" was not exempt.  The court had already determined that the plaintiff engaged in outside sales, based in part

on the fact that, for example, "Plaintiff's employment contract also provides that her primary duty was to sell mortgages away from Prospect's office." *See Id.* at 602.[5]

**RFP 4, 6, 15 and 19 and Interrogatory 8, 11 and 12**

Bank of America seeks to compel a time period for Requests 4, 6, 15 and 19 and Interrogatories 8, 11 and 12 of January 1, 2017 through the present. First, with respect to documents they agreed to search for and produce in response to these requests, the search for documents in the possession of Named Plaintiffs Sherman, Cronin, Rojas and Vrlaku, members of the putative New York and New Jersey classes at issue, was not limited to November 30, 2020 and they are not withholding any responsive documents based on an objection to time period.

Second, with respect to Bank of America's broader contention that January 1, 2017 through the present is the appropriate time period for all Named Plaintiffs (and, per Footnote 2, FLSA Opt-In Plaintiffs) on all requests and interrogatories, it fails to offer any explanation for the relevance of this obviously much longer, broader and more burdensome time period to claims that accrued after November 30, 2020 to any specific request or all of them. For the straw man that "contrary to Named Plaintiffs' objections, discovery is not limited to the FLSA collective or class time frame," Bank of America cites a single case in which it represents that a court was "similarly presented with the question" but fails to tell the Court anything about it. Doc 123-1 at 10. In *Byard v. Verizon W. Va.*, 2013 U.S. Dist. LEXIS 931 (N.D.W. Va. Jan. 2, 2013), Plaintiffs sought to discovery of certain specific information outside the FLSA statute of limitations and the court held that:

> Plaintiffs argue they need information concerning the **decision making process and rationales used or adopted by Defendants in deciding to apply** the rounding

---

[5] With respect to other parts of the *Hartman* decision not relevant here, Plaintiffs note that the court's interpretation relied upon a 2006 DOL interpretative letter that is contrary to current regulations. *See Id.* at 602-604.

of time system which Plaintiffs claim caused them to be paid less than required under the FLSA. Plaintiffs contend the sole reason Defendants applied the rounding of time system was to save them money on wages. **Plaintiffs nor Defendants have advised the Court precisely when the rounding system was put in place** at the Charleston and Clarksburg call centers.

In the absence of such information, it seems reasonable and appropriate to limit the temporal scope of the interrogatories and requests for production generally to the following time frame: **The earliest of five years prior to May 29, 2009 or five years prior to the earliest date that Defendants declare in their supplemental response is the first date they began the practice of rounding employee time** at the Clarksburg, WV and/or Charleston, WV call centers.

**Such a time frame should allow for the capture of the corporate decision making process leading up to the actual implementation of the complained of practice (rounding). It should also capture any correspondence, manuals, drafts of manuals, policies, draft policies and/or complaints that may have been prepared or filed relating to the planned implementation and the execution of the rounding system or process.** Such information is relevant to the willfulness issue.

*Byard v. Verizon W. Virginia, Inc.*, No. 1:11CV132, 2013 WL 30068 * 12-13 (N.D.W. Va. Jan. 2, 2013) (emphasis added).

Leaving aside that Bank of America, unlike the plaintiffs in *Byard*, is seeking to push virtually all its discovery beyond the statute of limitations and has not even offered the Court a basis for <u>any</u> request outside the statute of limitations, Bank of America's discovery is fundamentally different than the discovery sought in *Byard*. The discovery sought *Byard* was limited to corporate decision-making prior to the FLSA limitation period alleged to have directly led to policies within the FLSA limitation period that gave rise to Plaintiffs' claims. The discovery was therefore relevant to claims within the limitation period. The discovery sought by Bank of America prior to the FLSA limitation period—how Named Plaintiffs performed any mortgage loan office position (Request 4), applications for employment (Request 6), diaries, calendars, appointment books, or other logs of dates and/or events (Request 15), federal and state tax returns (Request 19), the identification of computers or other electronic devices on which Named Plaintiffs

performed work while employed by Defendants (Interrogatory 8), affiliation with civic, social, community and/or professional organizations (Interrogatory 11) and the identity, contact information, employment status and title of persons who may have knowledge or information pertaining to Plaintiffs schedule and how Plaintiff performed his or her job with Bank of America (Interrogatory 12)—is not relevant to Plaintiffs' claims, which depend upon validity of whatever exemption or exemptions, if any, Bank of America applied to Plaintiffs during the FLSA limitation period.

Defendants' Motion to Compel a time period of January 1, 2017 through the present on Requests 4, 6, 15 and 19 and Interrogatories 8, 11 and 12 should be denied.

## **RFP 19**

"Document Request No. 19 requests each Named Plaintiff's federal and state tax returns, including all attachments and schedules thereto from 2017 to present."  Doc 123-1 (MTC) at 11. After failing to attempt to provide Plaintiffs with any explanation of the relevance and proportionality of this request, in its Motion Bank of America ventures that:

> Tax returns have been deemed discoverable where (1) they are relevant to a matter in dispute, and (2) the information is not available from other sources. *Interstate Narrow Fabrics, Inc. v. Century United States, Inc.*, 2004 U.S. Dist. LEXIS 3839, at *4 (M.D.N.C. Feb. 24, 2004).

> Here, both prongs are satisfied.  Named Plaintiffs' tax documents are relevant to this matter because the tax documents will show whether Named Plaintiffs claimed any business expenditures related to their employment with Bank of America, such as paying for memberships in trade groups or organizations or travel for conferences. As discussed above, *see infra,* Section II.C., participation in these types of trade organizations or networking events and conferences is relevant to whether Named Plaintiffs were exempt under the outside sales exemption.

> The tax documents will likewise show whether Named Plaintiffs had any employment outside of Bank of America. Named Plaintiffs allege that they consistently worked an average of at least 60 hours per week, (Doc. Nos. 20-3 – 20-10), and the tax returns will reveal whether Named Plaintiffs were also working another job, which would discredit their declarations that they consistently worked

more than forty hours per week in the course of their employment with Bank of America.

*Id.* at 11.

As set forth above, "memberships in trade groups or organizations or travel for conferences" for "networking" is irrelevant to Bank of America's purported "outside sales exemption" defense and Bank of America has made no effort to establish relevance, grossly disproportionate to the needs of the case even if relevant, and, once again, not what Bank of America is seeking, as "claimed [] business expenditures" would both sweep up vastly more than memberships in trade groups or organizations or travel for conferences, for "networking" or otherwise, and fail to indicate whether there was "networking" or any other activity with any trade group or organization or at any conference. Regardless, Bank of America fails to address the obvious problem that, even if it colorably met the first prong of the test Bank of America itself offers the Court, it self-evidently fails the second prong, as Bank of America itself is seeking to compel "the information" from "other sources" and the tax return is not, in fact, a "source" of "the information.

The ultra-attenuated argument that "tax documents will likewise show whether Named Plaintiffs had any employment outside of Bank of America" is clearly a pretext and, here, a pretext Bank of America identified after the fact. Bank of America has not sought information about "any employment outside Bank of America" <u>anywhere else</u>, including by simply serving an interrogatory asking for it. This fails "both prongs" identified by Bank of America.

Finally, if Bank of America were seeking what Bank of America represents to the Court that it is seeking, it would not be seeking Named Plaintiffs' full "federal and state tax returns, including all attachments and schedules thereto from 2017 to present," which would include for example, and obviously without limitation, Plaintiffs' digital assets (form 1040), dependents

(schedule 1040), tax-exempt interest (form 1040, ln 2a), qualified dividends (form 1040, ln 3a), IRA distributions (form 1040, ln 4a), pension and annuities (form 1040, ln 5a), social security benefits (form 1040, ln 6a), tax refund (form 1040, ln 34), taxes owed (form 1040, ln 37), tax penalty (form 1040, ln 38), medical and dental expenses (schedule A, ln 1), state and local taxes (schedule A, ln 5) state and local real estate taxes (schedule A, ln 5b), state and local personal property taxes (schedule A, ln 5c), other taxes (schedule A, ln 6), home mortgage interest and points (schedule A, ln 8), investment interest (schedule A, ln 9), gifts to charity; cash (schedule A, ln 11), gifts to charity; other than by cash or check (schedule A, ln 12), casualty and theft losses (schedule A, ln 15), interest (schedule B, Part I) ordinary dividends (schedule B, Part II), foreign Accounts and Trusts (schedule B, Part III), short-term capital gains and losses (schedule D, Part I), long-term capital gains and losses (schedule D, part II), qualifying child information including name, social security number, year of birth, relationship, number of months the child lived with Plaintiff (schedule EIC) and household employee wages and related taxes paid (schedule H). This, and the vast amount of other information contained in a complete tax return, including all attachments and schedules, is obviously highly confidential and sensitive, which is why Bank of America volunteers that "Defendants are willing to treat these documents as 'Highly Confidential.'" Doc 123-1 at 11.

Bank of America is seeking to compel the production of eight years of full state and federal tax returns, including all attachments and schedules, not to obtain relevant information but to harass and intimidate, and not only the Named Plaintiffs: "Defendants request that the relief ordered by the Court be similarly binding on any comparable discovery requests served on Opt-In Plaintiffs after the Court has the opportunity to rule on the parties' forthcoming opt-in discovery proposals." Doc 123-1 at 2, fn 2. In other words, Bank of America asks this Court to order the

production of 8 years of full state and federal tax returns, including all attachments and schedules, by, ultimately, 434 Opt-in Plaintiffs. The obvious result of ordering 434 Opt-in Plaintiffs to produce 8 years of full state and federal tax returns is significant attrition of the FLSA collective, which is the obvious purpose.

Defendants' Motion should be denied.

**<u>Interrogatories 13 – 16</u>**

During the August 14 conference call, Named Plaintiffs advised Defendants and in their August 24 letter reiterated that:

> As we discussed during our August 14 call, courts in this District, like many districts, generally disfavor contention interrogatories prior to the end of discovery. *See, e.g.,    Capacchione v. Charlotte-Mecklenburg Sch.*, 182 F.R.D. 486, 489 (W.D.N.C. 1998), *see also Glob. Locating Sys., LLC v. ShadowTrack* 247, LLC, No. 1:19-CV-00225-MR, 2020 WL 3432714, at *2 (W.D.N.C. June 23, 2020) (contention interrogatories are generally disfavored until substantial discovery has taken place). You told us that you would discuss this with Bank of America.
>
> Regardless, as we also discussed, these interrogatories are extremely broad and general, call for long, narrative answers that are generally disfavored or more appropriate for deposition, and seek legal conclusions that are, at any rate, already set forth in detail by the Amended Complaint. **As we suggested during our August 14 call, the parties can likely resolve these issues by negotiating narrower, more specific requests. We remain willing to meet and confer.**

Doc 123-6 (emphasis added).

Refusing to meet and confer, Defendants responded that:

> As we explained in our July 26 correspondence, Interrogatories 13 through 16 seek information regarding each plaintiffs' allegations that they were misclassified as exempt, improperly paid, and that the Bank's conduct was willful. We pointed out that plaintiffs' responses were deficient because they make no attempt to provide any facts or circumstances individual to each plaintiff and instead broadly refer to the allegations of the Amended Complaint. The Amended Complaint was pled on behalf of the entire classes and collective and contains almost no allegations specific to each plaintiff.
>
> The Bank is entitled to the information that each one of the plaintiffs knows as to him or herself as to the particular facts and circumstances that he or she believes

24

support his or her claims in this lawsuit. If these responses must be supplemented (as required by FRCP 26(e)), so be it. But, plaintiffs cannot disregard their obligation to respond to these interrogatories by simply referring to a class and collective complaint pled on behalf of every "mortgage loan officer."

Doc 123-7 at 4

Defendants completely ignore that courts in this District have routinely held that contention interrogatories prior to the end of discovery are disfavored in this Circuit. *See, e.g., Capacchione v. Charlotte-Mecklenburg Sch*., 182 F.R.D. 486, 489 (W.D.N.C. 1998), *see also Glob. Locating Sys., LLC v. ShadowTrack* 247, LLC, No. 1:19-CV-00225-MR, 2020 WL 3432714, at *2 (W.D.N.C. June 23, 2020) (contention interrogatories are generally disfavored until substantial discovery has taken place). Regardless, Bank of America's categorical refusal to meet and confer, despite multiple attempts by Plaintiffs to discuss revisions that would get to what Bank of America purportedly needs and be reasonably answerable by Plaintiffs, is dispositive.

Defendants' Motion to Compel with respect to Interrogatories 13 – 16 should be denied.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Compel Discovery in its entirety, with the expense of opposing this Motion pursuant to Rule 37(a)(5)(B).

Respectfully submitted,

Dated: December 20, 2024

**Teague Campbell Dennis & Gorham, LLP**

*/s/ Jacob Wellman*
Jacob Wellman
4700 Falls of Neuse Road
Suite 450
Raleigh, NC 27609
Telephone: 919.719.4734
Facsimile: 919.873.1814
Email: JWellman@teaguecampbell.com


*Local Counsel to Plaintiffs*
*Russell Pfeffer, David Dessner,*
*Adam Sherman, Frank Cronin,*
*Roger Rojas, Jason Auerbach,*
*Grace Bozick, Muhamed Vrlaku*
*and all others similarly situated*

**Lax & Neville, LLP**

*/s/ Barry R. Lax*
Barry R. Lax
350 Fifth Ave.
Suite 4640
New York, NY 10118
Telephone: 212-696-1999
Facsimile: 212-566-4531
Email: blax@laxneville.com
*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*
*Russell Pfeffer, David Dessner,*
*Adam Sherman, Frank Cronin,*
*Roger Rojas, Jason Auerbach,*
*Grace Bozick, Muhamed Vrlaku*
*and all others similarly situated*

## CERTIFICATE ON USE OF ARTIFICIAL INTELLIGENCE

I, Barry R. Lax, an attorney, certify, as required by the Court's June 18, 2024 Order in *In re Use of Artificial Intelligence*, No. 3:24-mc-104 (W.D.N.C), that:

1- No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw and Lexis; and

2- Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ Barry R. Lax*_____

Barry R. Lax, Esq.

**CERTIFICATE OF SERVICE**

I, Barry R. Lax, an attorney, hereby certify that on December 20, 2024, a copy the foregoing document was filed through the Court's CM/ECF Electronic Filing System, which will transmit notice of such filing to all counsel of record.

/s/ Barry R. Lax_____

Barry R. Lax, Esq.